## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case Number:_____-CIV-_____

| | |
|---|---|
| RAYMOND T. MAHLBERG, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> URBAN COMPASS INC, <br><br> Defendant. | Civil Action No. <br><br> **CLASS ACTION COMPLAINT** <br> DEMAND FOR JURY TRIAL |

### COMPLAINT FOR PERMANENT INJUCTIVE RELIEF

**COMES NOW**, Plaintiff Raymond T. Mahlberg ("Plaintiff "or "Mahlberg") on behalf of himself and others similarly situated, by and through undersigned counsel, asserts the following claims against Defendant URBAN COMPASS, files this Complaint for Permanent Injunctive Relief pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 U.S.C. §2201 and 2202 as well as 28 CFR Part 36 Regulations. Plaintiff state as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1.  This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

2.  Plaintiff is a visually-impaired and legally blind person (disabled) who requires assistance through screen-reading software to read website content using his computer.

1

Plaintiff uses the term "blind" or "visually impaired" as legally blind. Disable as defined by ADA and Amendment acts of 2008, 42 USC §12101 (ADAAA).

3.Plaintiffs, individually and on behalf of those similarly situated persons (hereafter "Class Members"), bring this Class Action to secure redress against Defendant Urban Compass Inc., ("Defendant"). for its failure to design, construct, maintain, and operate its website to be fully and equally accessible to and independently usable by Plaintiffs and other blind or visually-impaired people. Defendants' denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of Plaintiffs' rights under the Americans with Disabilities Act ("ADA").

4. In the statutory text, Congress determined that "individuals with disabilities continually encounter various forms of discrimination," including "communication barriers". 42 U.S.C. § 12182(a).

4.Defendant's adjunct website https://www..com/ and specifically the Florida website https://www.compass.com/ (the "Website" or Defendant's website) is not accessible to blind or visually impaired consumers in violation of the "ADA." As a result, Plaintiff seeks a permanent injunction to cause a change in Urban Compass INC. ("Defendant" or " "Compass") policies, practices and procedures so that Defendant's website will become, and remain, accessible to blind. Plaintiff seeks injunctive relief, attorneys' fees and costs, including, but not limited to, court costs and expert fees, pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA") and 42 U.S.C. 2000a-3(a). *See also* 28 U.S.C. 2201 and 2202 as well as ADA 28 CFR Part 36 Regulations.

5. Throughout the ADA, "auxiliary aids and services" refers to techniques and devices to overcome barriers in communicating with people who have visual and hearing impairments, among other things. See 42 U.S.C. 12103(1).

6. Implementing these provisions, see 42 U.S.C. § 12186(b), the Attorney General's Title III regulations require public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulations specifically list "screen reader software," "magnification software," and "accessible electronic and information technology" as among the auxiliary aids that the statute requires. 28 C.F.R. § 36.303(b)(2).

7. Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").  Defendant's failure to design, construct, maintain, and operate its website https://www.compass.com/to be fully and equally accessible to and independently usable by Plaintiff, constitutes in Defendants' denial of full and equal access to its website, and therefore denial of its products and services offered thereby in conjunction with its physical location(s), resulting in a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

8. Defendant's website https://www.compass.com/ (the "Website" or Defendant's website). Defendant owns and operates the website and COMPASS real estate offices that are located in Florida.

9. Plaintiff Raymond T. Mahlberg, a blind veteran of the U.S. military, residing in Orlando, Florida brings this action under the Americans with Disabilities Act in Federal Court. 8.

Blind and visually impaired citizens must use screen reading software[1] or other assistive technologies in order to access website content.

10. Plaintiff cannot use his computer and mobile device browser without the assistance of appropriate and available screen reader software to understand websites.

11. Defendant's Website contains digital source code barriers where screen-readers for the blind do not work.

12. This case arises out of the fact that Defendant URBAN COMPASS INC.  has operated its business in a manner and way that effectively excludes individuals who are visually impaired from access to Defendants' COMPASS website based upon Defendant's failure to provide auxiliary aids and services for effective communications.

10. Plaintiff seeks injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11. Plaintiff, a legally blind person, is impeded to access and communicate with Defendant effectively and timely such that allowing access to Defendants' various business locations; as such impediment as rendered Defendants' physical places of accommodation not fully accessible to the visually impaired.

12. Plaintiff has attempted to access Defendant's Website in the past, and intends to continue to attempt to access Defendant's Website https://www.compass.com.

13. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's Website https://www.XXX.com/, Plaintiff will continue to be denied full access to the XXX website.

---

[1] "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

## JURISDICTION AND VENUE

15. Venue is proper in the Southern District of Florida, Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

16. This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiffs' claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

17. Personal jurisdiction exists when the Defendant purposefully availed itself of the conducting activities within the forum State. Defendant has been and is committing the acts or omissions alleged herein in the Southern District of Florida that caused injury, and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities and services of Defendant's Website while attempting to access the website from his home in Orange and Dade County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from visiting Defendant's brick-and mortar physical locations. This includes, Plaintiff attempting to obtain information about Defendant's physical locations (locations and hours and other important information) in Orange, Broward and Dade County.

17. Plaintiff is a resident of Orlando, FL 32817. Plaintiff was told that there is a Compass Office near his home in Orlando, FL, as well as Miami Dade County, where Plaintiff is searching for a new home.

18. This is an action injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendants' business. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

19.  The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's website. Plaintiff would like to become Defendant's patron and access the Defendant's website in the near future but the barriers Plaintiff encountered on Defendant's website have impeded Plaintiff's full and equal enjoyment of goods and services offered at Defendant's brick-and mortar offices. Defendant URBAN COMPASS is authorized to conduct, and is conducting, business within the State of Florida and within the jurisdiction of this court.

**THE PARTIES**

20. Plaintiff Mahlberg, is a resident of the State of Florida, Orange County, City of Orlando. Plaintiff, is *sui juris*, who is legally blind, and a member of a protected class under the ADA. Whereby, he has a disability within the meaning of 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff suffered an assault to the back of his head in 2004 which caused damage and atrophy of the optic nerve, and as a consequence, is legally blind.  Plaintiff is a legally blind individual who has a physical impairment that substantially limits the major

life activity of seeing. Accordingly, he has a disability within the meaning of 42 U.S.C. §
12102 and 28 C.F.R. § 35.104. Plaintiff is a qualified individual with a disability within the
meaning of 42 U.S.C. § 12131(2), 29 U.S. Code § 794 and 28 C.F.R. § 35.104. 21. Plaintiff
cannot use the computer without the assistance of a screen reader software. Mahlberg is a
proficient user of the JAWS screen-reader to access the internet." JAWS, or "Job Access With
Speech," is the most popular screen reading software for Windows-based computers. For
screen-reading software to work, the information on a website or on a mobile application must
be capable of being rendered into text. Usually, this means that graphics and embedded
hyperlinks must include alternative text (known as "alt-text")—a description of the image that
appears when a cursor floats over it or screen-reading software detects it.

21. Defendant is URBAN COMPASS INC. is a foreign profit corporation.  Defendant is
the owner and operator of a chain of Real Estate brokerage offices under the brand name
COMPASS and there are approximately more than 150 sales offices in the USA, six of
them in South Florida.  Defendant has offices located in Aventura, Coral Gables, Fort
Lauderdale, Naples and the regional headquarter in Miami Beach.

22. Upon information and belief, at all times material hereto, Defendant URBAN
COMPASS INC. owns, operates, and/or manages the day-to-day affairs of COMPASS
real-estate offices, which are operating within Broward and Miami-Dade County and other
counties in the State of Florida.

23. Plaintiff believes, and thereon alleges, that defendants COMPASS are corporate
affiliates and/or related entities, engaged in real estate brokerage and technology
industry in various states throughout the country, including Florida.

24. Plaintiff is further informed that said companies are organized and existing under, and
by virtue of, the laws of the state of New York, with their headquarters and principal

corporate offices located in 90 5th Ave., New York, NY 10011. Said Defendant entities will hereinafter collectively be referred to as "COMPASS" "the Defendant Company" or, where appropriate, "Defendants."

## **FACTS**

25. The Internet has become a significant source, a portal, and a tool for conducting business, including real estate business. Defendant developed an unique platform. While Compass functions like a traditional broker, the company provides an online platform technology that facilitates buying, renting and selling a house. Compass released an application (for computer or mobile) designed with a map and location of real time real estate for sale homes (or rent) pulled direct from the locals MLS. The system allows the clients to search for homes in the website application, request a Compass agent to represent him in the buy/sell transaction, contact the agent using an online form schedule tours to see the homes, send an offer, calculate payment, and click a button to use "buy now".

26.Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates: "The following private entities are considered public accommodations: service establishment," 42 U.S.C. §12181(7)(F) and other sales or rental establishment §12181(7)(E) ;28 C.F.R. §36.104(5).

27. Each of Defendant's COMPASS are open to the public and each is a place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as "service establishment," 42 U.S.C. §12181(7)(F) and "other sales or rental establishment" §12181(7)(E) and 28 C.F.R. Part 36.

27. COMPASS offers for sale or rent houses and apartments to the general in several areas of the United States including Florida. The Defendant has more than 150 Real Estate offices.

28. Defendant has control over its website and mobile application, and/or operates his web pages, including image and data content. Defendant owns and operate the domain name https://www.compass.com/ that is configured for use by mobile devices such as smartphones, as well as regular computer laptops and desktops to access Defendant's website.

29. One of the functions of Defendant's website (available in mobile or computer version) is to provide the public information on the various locations of Defendant's offices that sell and t houses. The other function of the website is to sell Defendant's merchandise.

30. Defendant's Website is offered by Defendant as a way for the public to communicate with COMPASS company and agents.  Defendant's Website also permits the public to register and create an account allows the general public to select homes they are interested in renting or buying, contact the Compass agent, click and utilize "Buy Now" feature and other services.

31. Thus the website application provides privileges, and benefits integrated to the physical real estate brokerage office.

32. The Website is an integral part of the goods and services offered by Defendant's offices, because website and physical offices are heavily integrated, since the website allows the public the ability to locate Defendant's offices and agents, sells and rent homes.

33.  Further, The Defendant's real estate sales offices provides to the public important services. Defendant's Website provides consumers with access to an array of services

including real estate sales office locations and hours, information about the services in its real estate sales offices, information about real estate for sale or rental and information about various neighborhoods. Thus, COMPASS website and mobile app are an extension of defendant's physical offices. By this nexus, between the offices and the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(E) of the ADA.

34. Plaintiff is a customer of COMPASS by using COMPASS application and thru his internet inquiries, and his intent to buy a house with COMPASS. Plaintiff then learned there are some COMPASS offices in South Florida.

35. As a result of Plaintiff being legally blind, before he embarks on any venture from his home, he studies the location where he is seeking to patronize through using the internet. In the case of Plaintiff's investigation of COMPASS's office locations, Plaintiff went to defendant's Website to learn (1) how to select homes in the COMPASS application; (2) the cost of homes in Miami, (3) select a COMPASS agent to represent Plaintiff in the buy process; (4) times and dates of operation COMPASS's offices in his area so he can arrange transportation, (5) and the exclusive online services, like "Buy Now" and (6) privacy policy.

36. Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices, sales, discounts, and rewards programs. Plaintiff may look at several dozens of sites to compare features, models, quality and prices.

37. During the plaintiff's several visits to the website using JAWS (computer) and Voiceover (mobile) occurring in **October 23, 2019** and the last in **November 25, 2019**, the plaintiff encountered multiple access barriers that denied the plaintiff full and equal access

to the facilities, goods and services offered to the public and made available to the public; and that denied the plaintiff the full enjoyment of the facilities, goods, and services of the website, as well as to the facilities, goods, and services of Defendant's locations in Orlando and South Florida (near Plaintiff's home).

38. Plaintiff was impeded to patronize COMPASS office and services  by Plaintiff being unable to learn about COMPASS location addresses, hours, and the ability to create an online account, read the Return and Privacy Policy, among other things readily available to sighted individuals.

39. Plaintiff also intended to use COMPASS Website in order to select an agent and buy a house. However, when Plaintiff went online to select some homes to schedule a tour and create an account, he was unable to complete the transaction. Neither locate a COMPASS office near him.

40. Plaintiff called Defendant COMPASS office to inquire about the process of buying a house. However, Defendant's representative failed to fully assist Plaintiff and referred him to its Website.

41.  Plaintiff called Defendant to inquire about houses available for sale at the COMPASS offices and website in the South Florida area. However, Defendant's representative failed to fully assist Plaintiff and referred him to its Website (platform).

42.  Following communications with Defendant's representative, Plaintiff attempted to utilize Defendant's Website as instructed by Defendant's representative.

43.  Defendant's Website was inaccessible, so Plaintiff could not (among other things):

     a.       Find out about COMPASS's properties for sale;

     b.       Shop homes, schedule home tours;

     c.        Learn about the COMPASS's agents, since Plaintiff is in the market to buy a house.

     d.        Plaintiff attempted to locate an "Accessibility Notice" on Defendant's mobile and computer website which would direct him to a webpage with contact information for disabled individuals who have questions, concerns, or who are having difficulties communicating with the business. However, Plaintiff was unable to do so because no such link or notice was provided on Defendant's website.

## AMERICAN WITH DISABILITIES ACT

44.  The failure to access the information needed precluded Plaintiff's ability to patronize COMPASS service office because, as a blind individual, Plaintiff needs to plan his outings out in detail in order to have the proper financing for a venture, and insure that he arrives at a given location.

45.  Title III provides that "no individual shall be discriminated against on the basis of disability" in "any place of Public Accommodation." 42 U.S.C. § 12182(a). As defined in Title III, the term "public accommodation" includes a "service establishment." Id. § 12181(7)(E),(7)(F). Defendant COMPASS owns and operates several service real estate office, the COMPASS offices.

45.  Technology evolves, in these days, consumers are doing most of their shopping online. Defendant's provision of a Website with a map and house listings is an essential part of the services offered, and is no different than the customer service to the public as part of COMPASS services, privileges and benefit to the public.

46. Title III ADA Part 36 regulation was amended to integrate section 36.303 Auxiliary Aids and Services "A public accommodation shall furnish appropriate auxiliary aids and

services where necessary to ensure effective communication with individuals with disabilities."

47. Within this context, the Ninth Circuit has recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites. *Haynes v. Dunkin Donuts LLC*, Docket No. 18-10373 (11th Cir. Jul 31, 2018) D.C. Docket No. 0:17-cv-61072-WPD. This is in addition to the numerous courts that already recognized such application.

47. By this nexus, the website https://www.compass.com and its mobile app are characterized as an intangible service, privilege and advantage provided by COMPASS a place of Public Accommodation (COMPASS's offices) as defined under the ADA, and thus its website is an extension of COMPASS services, privileges and advantages made available to the general public by Defendant through its brick and mortar offices.

48. Defendant's Website is not designed with consideration for WCAG, Accessible Rich Internet Applications (*ARIA*) software language and Universal design[2]. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website.

49. Plaintiff's expectation of participating in COMPASS website, services and privileges was eliminated since he could not access Defendant's https://www.compass.com website at all to avail himself of the latest services which Defendant offers to the public.

---

[2]Following **universal design** principles in creating a **website** provides access to all users regardless of their abilities, their disabilities, or the limitations of their equipment and software. Washington University. "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design." Kalbag, Laura (2017).

50. The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's website https://www.compass.com.

51. Plaintiff would like to become Defendant's patron and access the Defendant's website in the near future but the barriers Plaintiff encountered on Defendant's https://www.compass.com website and mobile application have impeded Plaintiff's full and equal enjoyment of services offered at Defendant's brick-and-mortar offices.

52. The fact that Plaintiff could not access the Defendant's Website and could not comprehend the electronic pages contained therein, left Plaintiff excluded from accessing COMPASS services available from Defendant and further left him with the feeling of **segregation, rejection, isolation**, and **unable to participate** in his own business affairs (such as in this case purchasing organic groceries and wellness products) in a manner equal to that afforded to others who are not similarly disabled.

53. Plaintiff's inability to fully use Defendant's Website and the mobile application therein has hindered, impeded and inhibited Plaintiff's access to Defendants physical office locations. Plaintiff has suffered as a result and has suffered particularized harm and an injury in fact.

54. Plaintiff cannot make proper arrangements for transportation of himself to the COMPASS's offices location in South Florida, without the ability to know in advance the COMPASS's services which service is available online through Defendant's Website. Plaintiff also faces a great degree of uncertainty of how to physically travel to Defendant's COMPASS' office in South Florida and the homes offered for sale, Plaintiff is effectively

denied the ability to physically travel to Defendant's COMPASS's offices and homes for sale.

55.  Plaintiff has a concrete plan to purchase a home in Miami with a COMPASS agent using the COMPASS online platform when he is treated like other members of the public. Consequently, the Plaintiff is unable to determine the cost of Defendant's goods and services, including becoming informed about the COMPASS services available.

56.  By denying Plaintiff the opportunity to comprehend COMPASS Website and mobile application therein due to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff the opportunity to participate in or benefit from Defendant's goods and services as afforded to the public.

57.  Plaintiff will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

58.  On information and belief, Defendant has not offered any form of website and mobile application in an accessible format for blind or visually impaired individuals.

59.  Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its real estate offices.

60.  All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

61.  On information and belief, Defendant is aware of the common access barriers and barriers to effective communication within its Website and the electronic pages/data therein which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

62. Defendant and alike retailers are fully aware of need to provide full access to all visitors to its Website as Department of Justice published several communications stating that the website is an auxiliary-aid of the physical offices and must be accessible. (*September 25, 2018 letter from Assistant Attorney General) and Title III ADA 28 C.F.R. § 36.303.*

63. Binding case law increasingly recognize that private entities are providing goods and services to the public through the websites that operate as places of Public Accommodation under Title III.

64. A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

65. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

66. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

68. The Website is also a p*lace of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(E, F) as the public is able to purchase COMPASS services online through the Website (which meets the definition of "sales establishment").

69. The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

70. Types of website source-code programming errors include (but are not limited to) source-code errors or marketing spyware which are easily identifiable which are prone to making the website inaccessible, that create empty headings and text fields that create confusion for a user that rely on the "TAB" key to navigate a web page.

71. A sampling review of just part of it revealed that the Website is not functional for users who are visually impaired. The Website contains several types of errors, easily identifiable and correctable, which occur throughout the Website such as:

    a.  All image elements must have an alt attribute. WCAG 2.0 A F65

    b.  Each a element must contain text or an img with an alt attribute. WCAG 2.0 A F89

    c.  All fields in a group of input fields (for example phone numbers) need a label. WCAG 2.0 A F86

    d.  All onclick handlers should have an equivalent onkeypress handler. WCAG 2.0 A

    e.  Button elements containing only an img must have an alt attribute on the img WCAG 2.0 A F65

    f.  Content inserted with CSS is not read by some screen readers, and not available to people who turn off style sheets. WCAG 2.0 A F87

    g.  Iframe and frame elements must have title attributes WCAG 2.0 A 2.4.1

72.  More violations may be present on webpages of the Website, and they will be determined and proven through the discovery process and expert audit.

73. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202 and Title III ADA Subpart E Section 36.501.

74.  Plaintiff has retained the law office of Acacia Barros, Esq. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses

incurred. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant COMPASS.

## CLASS ACTION ALLEGATIONS

67. Plaintiffs, on behalf of himself and all others similarly situated, seeks to certify a **nationwide class** under Fed. R. Civ. P. 23(a) and 23(b)(2) (b)(3), the Nationwide class is initially defined as follows:

all legally blind individuals in the United States who have attempted to access Defendant's website by the use of a screen reading software as a result have been denied access to the equal enjoyment of services offered in Defendant's physical locations, during the relevant statutory period and including final judgment in this action.

68. The <u>Florida class</u> is initially defined as follows: all legally blind individuals in the State of California who have attempted to access Defendant's website by the use of a screen reading software during the applicable limitations period up to and including final judgment in this action.

69. Excluded from each of the above Classes is Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judge and the court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

70. *Numerosity*. Fed. R. Civ. P. 23(a)(1). This action has been brought and may properly be maintained as a class action against Defendant under Rules 23(b)(1)(B) and 23(b)(3)

of the Federal Rules of Civil Procedure. While the exact number and identities of other Class Members are unknown to Plaintiffs at this time, Plaintiffs are informed and believes that there are hundreds of thousands of Members in the Class. Based on the number of customers who have visited Defendant's Florida offices and website, it is estimated that the Class is composed of more than 10,000 persons. Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of Members. The Members of the Class are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

71. *Typicality*: Plaintiffs and Class Members' claims are typical of the claims of the Members of the Class as all Members of the Class are similarly affected by Defendant's wrongful conduct, as detailed herein.

72. *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Members of the Class in that they have no interests antagonistic to those of the other Members of the Class. Plaintiffs have retained experienced and competent

73. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class Members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Members of the Class to individually seek redress for the wrongful conduct alleged herein. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action

as a class action. If Class treatment of these claims were not available, Defendant would likely unfairly receive thousands of dollars or more in improper revenue.

74. *Common Questions Predominate*: Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual Members of the Class. Among the common questions of law and fact applicable to the Class are:

i. Whether Defendant's website, https://www.compass.com/, is inaccessible to the visually-impaired who use screen reading software to access internet websites;

ii. Whether Plaintiffs and Class Members have been unable to access https://www.compass.com/ through the use of screen reading software;

iii. Whether the deficiencies in Defendant's website violate the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq*.;

iv. Whether, and to what extent, injunctive relief should be imposed on Defendant to make https://www.compass.com/ readily accessible to and usable by visually-impaired individuals;

v. Whether Plaintiffs and Class Members are entitled to recover statutory damages with respect to Defendant's wrongful conduct; and

vi. Whether further legal and/or equitable relief should be granted by the Court in this action.

75. The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will

be encountered in the management of this litigation which would preclude their maintenance of this matter as a Class action.

76. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

77. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual Members; and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

78. The prosecution of separate actions by Members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Members of the Class, although certain Class Members are not parties to such actions.

79. Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

**COUNT I**

**Violations of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq*.**

(On Behalf of Plaintiffs, the Nationwide Class and the Florida Class)

80. Plaintiffs allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 53, inclusive, of this Complaint as if set forth fully herein.

81. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

56. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no

individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services,

unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii). 57. Defendant's real estate office locations are "public accommodations" within the meaning of 42 U.S.C. § 12181 *et seq*. Defendant generates millions of dollars in revenue from the sale of its amenities and services, privileges, advantages, and accommodations in Florida through its locations and related services, privileges, advantages, and accommodations and its Website, https://www.compass.com/ is a service, privilege, advantage, and accommodation provided by Defendant that is inaccessible to customers who are visually-impaired like Plaintiff. This inaccessibility denies visually-impaired customers full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public. Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., in that Defendant denies visually-impaired customers the services, privileges, advantages, and accommodations provided by https://www.compass.com/. These violations are ongoing.

58. Defendant's actions constitute intentional discrimination against Plaintiffs and Class Members on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. in that: Defendant has constructed a website that is inaccessible to Plaintiffs and Class Members; maintains the website in this inaccessible form; and has

failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause. 79.  The ADA applies to the Defendant's Website, as the Website is a *place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress" intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

83.  Defendant is in violation of the ADA by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access websites and electronic documents. These violations are ongoing.

84.  As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and §12188, also 28 C.F.R. §36.501 to remedy the discrimination.

 84.  Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Mahlberg injunctive relief; including an order to:

a)         Require Defendant take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the https://www.compass.com website's being readily accessible, to provide a temporary alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made.  Title III American with Disabilities Act Part 36 Regulation.

b)       Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating COMPASS offices and becoming informed of and signing up for COMPASS platform for buying a house, and of viewing electronic documents provided to the public within Defendant's Website. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from obtaining the goods and services made available to the public. Title III ADA Part 36 Regulation.

85. For all of the foregoing, the Plaintiff has no adequate remedy at law.

Plaintiff has retained the law office of Acacia Barros, Esq. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant.

Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Class Members, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. For an Order certifying the Nationwide Class and Florida Class as defined herein and appointing Plaintiffs and his Counsel to represent the Nationwide Class and the Florida Class;

B. A preliminary and permanent injunction pursuant to 42 U.S.C. § 12188(a)(1) ADA and

requiring Defendant to take the steps necessary to make Defendant's website

https://www.compass.com/ readily accessible to and usable by visually-impaired

individuals;

 b. That the Court enter an Order directing Defendants to continually update and maintain their

computer version of the defendant's website and COMPASS's mobile application (app) to

ensure that it remains fully accessible to and usable by visually impaired individuals;

c.  That the Court enter an Order directing Defendants to evaluate and neutralize their policies

and procedures towards persons with disabilities for such reasonable time so as to allow

Defendants to undertake and complete corrective procedures;

f.  That the Court enter an award of attorney's fees, costs and litigation expenses pursuant to

42 U.S.C. § 12205.

### DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demands a jury trial
for all claims so triable

Respectfully Submitted,

Respectfully submitted,

Dated this 31st day of July, 2019.

s/Acacia Barros
Attorney for Plaintiff
ACACIA BARROS, P.A.
Acacia Barros, Esq.
FBN: 106277
11120 N. Kendall Dr., Suite 201
Miami, Florida 33176
Tel: 305-639-8381
ab@barroslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2019 that the foregoing document has been filed using CM/ECF system and will be served via email when Defendant/Defendant's counsel enters an appearance.